Filed 3/2/23; Certified for Publicatiokn 3/27/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| M.D. DOE et al., | C095253 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVCV20-00738) |
| v. | |
| MARYSVILLE JOINT UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

In 2002, plaintiffs M.D. Doe, A.J. Doe, and S. Doe (together, plaintiffs) sued defendant Marysville Joint Unified School District (the District) and at least one District employee, alleging their school counselor sexually abused them. The trial court entered judgment in favor of the District after finding that plaintiffs failed to timely file a government claim before filing their complaint. We affirmed the judgment on appeal (*Doe v. Marysville Joint Unified School District* (Nov. 9, 2005, C047771) [nonpub. opn.]), and the Supreme Court denied review.

1

In 2019, the Legislature passed Assembly Bill No. 218 (2019-2020 Reg. Sess.) (Assembly Bill 218), which amended Code of Civil Procedure section 340.1[1] to extend the statute of limitations for victims bringing childhood claims of sexual assault. (Stats 2019, ch. 861, § 1.) Thereafter, plaintiffs filed this action against the District and certain individuals predicated on the same set of facts as their 2002 suit. The trial court sustained the District's demurrer without leave to amend as to plaintiffs, finding that the prior dismissal was res judicata, and that allowing section 340.1 to reopen a final judgment would run afoul of constitutional separation of powers principles.

Plaintiffs appeal, arguing the trial court erred because their prior claims were not "litigated to finality" within the meaning of section 340.1 and may therefore be revived, and because dismissing plaintiffs' claims violates equal protection. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that their school counselor, William Wayne Babcock (Babcock), sexually abused them for several years while they were students at an elementary school in the District.[2] Between June and August 2002, plaintiffs filed claims under the Government Claims Act. (Gov. Code, § 810 et seq.) Plaintiffs then filed suit against the District and employee June Chiechi (Chiechi), alleging Babcock abused them between 1998 and 2002, and that the District and Chiechi breached various duties to plaintiffs and their parents related to Babcock's abuse. The trial court granted the District's and Chiechi's motions for summary judgment, finding that plaintiffs' causes of action accrued more than a year before they filed their government claims, and thus their causes of action were untimely. Plaintiffs appealed, and this court affirmed the trial court's

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

[2]     Babcock is currently serving a sentence of 22 years in prison for his crimes.

ruling.  The Supreme Court denied plaintiffs' petition for review and issued a remittitur in March 2006.

On January 1, 2020, Assembly Bill 218 took effect, extending the statute of limitations for victims bringing childhood sexual assault claims that had not been "litigated to finality."  (§ 340.1, subd. (q).)  In response to this statutory amendment, on October 8, 2020, plaintiffs, along with another alleged victim (J. Doe), filed this action against the District, Babcock, and Chiechi.  Their complaint effectively alleged the same claims against the District as were alleged in the 2002 suit.

The District demurred to all 17 causes of action in the complaint on various grounds.  The trial court sustained the demurrer without leave to amend as to plaintiffs on two grounds:  (1) the prior action was res judicata; and (2) case authority which held that permitting the Legislature to reopen final judgments would violate separation of power principles, *Perez v. Roe 1* (2006) 146 Cal.App.4th 171 (*Perez*) and *Plaut v. Spendthrift Farm* (1995) 514 U.S. 211 [131 L.Ed.2d 328] (*Plaut*).  The trial court entered a judgment of dismissal as to plaintiffs, and plaintiffs filed this appeal.

DISCUSSION

Plaintiffs argue that because their first action was dismissed as untimely under the Government Claims Act, it was not litigated to finality *on the merits*, and thus section 340.1 permits them to bring their claims anew.  They assert that the Legislature has long been permitted to extend retroactively the statute of limitations for civil claims, thereby reviving them, and may do so here without violating the Constitution.  With respect to res judicata, they contend that terminating an action on statute of limitations grounds does not have a res judicata effect because it is not a determination on the merits.  Finally,

3

plaintiffs argue that reading section 340.1 to prohibit them from reopening their judgment in the 2002 case violates equal protection. We find plaintiffs' arguments unpersuasive.[3]

A. *Section 340.1*

Enacted in 1986, "[s]ection 340.1 governs the period within which a plaintiff must bring a tort claim based upon childhood sexual abuse." (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 952.) The Legislature has since repeatedly amended the section to further expand the statute of limitations and decrease other barriers to victims seeking to bring their claims of abuse. (*Ibid*.) Effective January 1, 2020, Assembly Bill 218 again extended the statute of limitations to permit an "action for recovery of damages suffered as a result of childhood sexual assault" to be brought by age 40 or within five years of when the plaintiff discovered (or reasonably should have discovered) the resulting psychological injury or illness. (§ 340.1, subds. (a), (c).) As relevant here, the amended statute also provides for a three-year revival period for all claims for damages brought

---

[3]  Plaintiffs' counsel is admonished for failing to include a single record citation in plaintiffs' briefs in violation of California Rules of Court, rule 8.204(a)(1)(C). "It is the duty of counsel to refer us to the portion of the record supporting [plaintiffs'] contentions on appeal. [Citations.] . . . 'It is neither practical nor appropriate for us to comb the record on [plaintiffs'] behalf.' " (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.)

Plaintiffs' briefs are deficient in other respects. For example, the opening brief's section discussing the standard of review contains no citations to legal authority. (Cal. Rules of Court, rule 8.204(a)(1)(B).) It similarly contains no proper case citation regarding its discussion of the rules of statutory interpretation. The reply brief also contains an improper discussion of the status of the evidence in this case, referencing facts that are neither alleged in the complaint nor otherwise contained in the record.

Despite plaintiffs' disregard of the rules of appellate procedure, we will exercise our discretion to consider the merits of plaintiffs' appeal. We do so because the District has substantively responded to plaintiffs' arguments, and because the principal issue presented on appeal is a legal question that does not require an intensive review of the record.

under subdivision (a) that had "not been litigated to finality and that would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, claim presentation deadline, or any other time limit had expired." (§ 340.1, subd. (q).)

Subdivision (r), which also addresses claim revival, states: "The changes made to the time period under subdivision (a) as amended by [Assembly Bill 218] apply to and revive any action commenced on or after the date of enactment of [Assembly Bill 218], and to any action filed before the date of enactment, and still pending on that date, including any action or causes of action that would have been barred by the laws in effect before the date of enactment." (§ 340.1, subd. (r).)

B.     *Statutory analysis*

As the trial court's ruling on demurrer presents a question of statutory interpretation, we review the matter de novo. (*California Apartment Assn. v. City of Fremont* (2002) 97 Cal.App.4th 693, 699.) In doing so, we conclude that the plain language of section 340.1, subdivisions (q) and (r), particularly in view of Assembly Bill 218's amendments to the statute's revival language, does not support plaintiffs' interpretation.

When construing statutes, our purpose is to discern the Legislature's intent so that we best effectuate the purpose of the law. (*People v. Albillar* (2010) 51 Cal.4th 47, 54-55.) "When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls. [Citation.]" (*Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 519.) If the language of the statute is ambiguous, a court "can look to legislative history [citation] and to rules or maxims of construction" to resolve the ambiguity. (*People v. Smith* (2004) 32 Cal.4th 792, 798.)

We turn first to the plain language of the statute. As set forth above, section 340.1, subdivision (q) provides that it only revives a claim for damages "that has *not been litigated to finality*." (Italics added.) Similarly, subdivision (r) states that the statute

5

revives any action that has commenced but is "*still pending* on [the date of enactment]." (Italics added.)  Thus, the statute only revives claims that have not already reached final adjudication.  Here, there is no dispute that plaintiffs' claims were litigated to finality long ago; they were adjudicated by the trial court on summary judgment, which we affirmed on appeal, and finally, the Supreme Court denied review.  (See *Perez, supra*, 146 Cal.App.4th at p. 188.)  According to the unambiguous statutory language, plaintiffs' claims therefore cannot be revived.  (See *Safechuck v. MJJ Productions, Inc.* (2020) 43 Cal.App.5th 1094, 1100 ["The import of section 340.1, subdivisions (q) and (r) is clear: the Legislature intended to preserve and revive all nonfinal claims"].)

Nonetheless, plaintiffs urge us to read the phrase "not been litigated to finality" to include the phrase "*on the merits*."  And because a disposition based upon a limitations period violation is not a determination on the merits, plaintiffs contend that their claims—which were summarily adjudicated as untimely under the Government Claims Act—are not barred from revival.  As support for reading this language into subdivision (q), plaintiffs repeatedly cite to a purported quote from the report of the Senate Judiciary Committee discussing Assembly Bill 218:  " 'Termination of a prior action on the basis of the statute of limitations Plaintiffs not constitute a claim that has been litigated to finality on the merits.' "

Although this text is not found in the legislative history, we presume that plaintiffs are referring to the following statement in the Senate Judiciary Committee's analysis: "Termination of a prior action on the basis of the statute of limitations does not constitute a claim that has been litigated to finality on the merits." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 218 (2019-2020 Reg. Sess.) July 2, 2019, p. 2.)  This citation does not help plaintiffs.  In fact, this quote is a description of the *prior* version of section 340.1, which is laid out before the discussion of Assembly Bill 218's amendments.

Before the enactment of Assembly Bill 218, section 340.1 contained the language that plaintiffs ask us to read back into the statute.  The prior version stated that the revival

6

provision of section 340.1 does not apply to "[a]ny claim that has been litigated to finality *on the merits* in any court of competent jurisdiction prior to January 1, 2003. Termination of a prior action on the basis of the statute of limitations does not constitute a claim that has been litigated to finality on the merits." (§ 340.1, former subd. (d)(1), italics added; Stats. 2018, ch. 423, § 8.) However, the Legislature had good reason to remove the language allowing revival of claims litigated to finality "on the merits": reopening a case litigated to finality would be unconstitutional.

This issue was squarely addressed in *Perez, supra*, 146 Cal.App.4th 171. There, the Second District Court of Appeal, Division Eight, considered whether prior section 340.1's language allowing revival of claims litigated to finality on statute of limitations grounds was an unconstitutional attempt by the Legislature to unravel a final judgment. In finding that it was, the *Perez* court explained: "Once the judgments against appellants in the previous action were upheld on appeal—for [the first appellant] when the California Supreme Court denied her petition for review, and for [the second appellant] when his appeal was dismissed—they became final for separation of powers purposes and could not be legislatively revived. Because the power to conclusively resolve cases by rendering dispositive judgments rests with the judiciary alone [citation], the Legislature may not reverse final judgments such as those that were rendered under the previous limitations period of section 340.1." (*Perez*, at p. 188.) Accordingly, *Perez* held that "the Legislature violated the separation of powers doctrine when it amended section 340.1 to revive childhood sex abuse actions where a final judgment had been entered under the statute of limitations that previously existed." (*Perez*, at p. 188; Cal. Const., art. III, § 3.)

*Perez* is rooted in both federal and state constitutional principles. It relied on the United States Supreme Court's decision in *Plaut, supra*, 514 U.S. 211, which held that retroactive legislation purporting to apply to a case already finally adjudicated, impermissibly reverses a determination already made in a particular case. (*Plaut*, at p.

7

225.)  The high court reasoned that such legislation is a "clear violation of the separation-of-powers principle" because, once a judgment becomes final, "Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was."  (*Id.* at pp. 225, 227, original italics.)

Perez also based its holding on two California Supreme Court cases, *People v. Bunn* (2002) 27 Cal.4th 1, and its companion case, *People v. King* (2002) 27 Cal.4th 29.  Deriving their analyses from *Plaut*, both *Bunn* and *King* held that "if a criminal complaint is dismissed because the statute of limitations has run, and the Legislature later retroactively expands the statute of limitations before that ruling becomes final, then the new limitations period will apply.  If the Legislature changes the limitations period after the time for appeal has expired or the ruling has completed its journey through the entire appellate process, however, the Legislature's attempt to revive the criminal action violates the separation of powers doctrine."  (*Perez, supra*, 146 Cal.App.4th at p. 177 [summarizing the holdings in *Bunn* and *King*].)

*Perez* found the rule announced in *Bunn* and *King* applicable in the civil context for the same reasons it applied in criminal actions:  allowing the Legislature to undo the finality of judgments violates the separation of powers doctrine.  (*Perez, supra*, 146 Cal.App.4th at p. 183.)  Several years after *Perez* was issued, the Legislature deleted the problematic language from the statute.  Thus, Assembly Bill 218's amendments actually negate plaintiffs' interpretation, as the Legislature expressly *removed* language permitting plaintiffs to reopen cases disposed of on nonmerit-based grounds.  This clearly indicates the Legislature's intent that all claims litigated to finality, regardless of the basis for their adjudication, may not be revived under section 340.1.

Further, a statute should not be construed to violate the Constitution " ' "if any other possible construction remains available." ' "  (*People v. Trujeque* (2015) 61 Cal.4th 227, 256; accord, *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council* (1988) 485 U.S. 568, 575 [99 L.Ed.2d 645, 654] ["where an otherwise

8

acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"].)  Reading the statute to permit revival of any fully adjudicated claims, even those not decided on the merits, would give rise to the same constitutional problem that the amended statute resolved.

Additionally, we note that plaintiffs' argument rests on the premise that their action was dismissed as untimely under the applicable *statute of limitations*, but this is inaccurate.  Rather, the courts found plaintiffs failed to timely file, under Government Code section 911.2, a government claim, which barred their action.  In many respects, the government claims presentation deadline is distinct from a statute of limitations.  Indeed, our Supreme Court previously found the two concepts distinguishable in the context of former section 340.1.  Specifically, it held that section 340.1's prior language reviving claims that would otherwise be barred "solely because the applicable statute of limitations" had expired (§ 340.1, former subd. (c); Stats. 2018, ch. 423, § 8), did *not* revive the deadline for presenting a government claim to a public entity.  (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 219-220, superseded by statute as stated in *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 914.)  In doing so, it explained that "the government claim presentation deadline is not a statute of limitations.  Had the Legislature intended to also revive . . . the claim presentation deadline under the government claims statute, it could have easily said so.  It did not." (*Id*. at p. 213.)[4]

---

[4]     In response to *Shirk*, "Assembly Bill 218 also amended Government Code section 905, which imposes claim presentation requirements for local public entities, to retroactively expand the exemption for section 340.1 to all such claims.  (Gov. Code, former § 905, subd. (m) [exemption for [] § 340.1 claims 'arising out of conduct occurring on or after January 1, 2009']; Assem. Bill 218, § 1 [amending Gov. Code, § 905, subd. (m) to eliminate 'on or after January 1, 2009,' and add subd. (p)]; Gov. Code, § 905, subd. (p) ['The changes made to this section by the act that added this subdivision

9

Accordingly, plaintiffs cannot casually substitute one concept for the other without even acknowledging the distinction.

Nonetheless, regardless of why plaintiffs' claims were dismissed—whether for failing to comply with statute of limitations or the government claims presentation deadline—plaintiffs' claims were litigated to finality. Thus, pursuant to section 340.1, subdivisions (q) and (r), plaintiffs' claims cannot be revived.

Plaintiffs do not grapple with the separation of powers concerns raised by their interpretation. Instead, they argue that their prior action does not have a res judicata effect because it was disposed of on statute of limitations grounds, and that permitting plaintiffs to reopen their case retroactively does not violate the ex post facto clause of the constitution or due process. These arguments miss the point. Even if we accepted them as true, they would not resolve the separation of powers violation that would arise if the statute allowed them to revive their case.[5]

Plaintiffs also cite to *Mid-Century Ins. Co. v. Superior Court* (2006) 138 Cal.App.4th 769, which held that a statute reviving claims against earthquake insurers, except those claims "litigated to finality," revived claims dismissed under the prior statute of limitations. (*Id*. at p. 776, fn. 1.) However, *Mid-Century* did not address the separation of powers concerns raised by this interpretation; it appears that neither party

---

are retroactive'].)" (*K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717, 736.)

[5] Indeed, plaintiffs are correct that termination of an action on statute of limitations grounds is not a determination on the merits and thus does not have res judicata effect. (*Koch v. Rodlin Enterprises* (1990) 223 Cal.App.3d 1591, 1595-1596.) However, plaintiffs' 2002 case was not dismissed on statute of limitations grounds, and plaintiffs do not address whether dismissal of an action for failure to timely file a government claim is res judicata on any future action. Nonetheless, even if the trial court may have erred in sustaining the demurrer on res judicata grounds, " 'we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11.)

10

raised the constitutional issue and the appellate court simply did not consider it. Thus, *Mid-Century* is not relevant to our analysis here. (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 ["It is axiomatic that cases are not authority for propositions not considered"].)

Based on the foregoing, we conclude that section 340.1's revival provision means what it says. It exempts from revival all claims that have been litigated to finality, irrespective of the basis for the court's final determination.

C. *Equal protection*

Plaintiffs next contend that preventing litigants from reviving their lawsuit violates equal protection, because it treats one group (those who litigated their claims to finality) differently than another (those who did not) without a rational basis for the unequal treatment. We disagree.

"The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons the equal protection of the laws." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195.) " ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citations.]" (*People v. Morales* (2016) 63 Cal.4th 399, 408, italics omitted.)

Here, section 340.1 distinguishes between those who litigated their claims to finality prior to January 1, 2020, from others similarly situated who had not previously litigated their cases to finality. Thus, the two groups are similarly situated for purposes of the law.

"When, as here, the classification is not based on a suspect class and does not involve a fundamental right, we evaluate the classification under the 'rational basis' test

11

and determine only if the classification 'bears a fair relationship to a legitimate public purpose.' [Citation.] We remain '[m]indful of the deference we must accord the Legislature under the rational basis standard' [citation] and uphold a statutory classification against an equal protection challenge 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' [Citation.]" (*People v. Conley* (2004) 116 Cal.App.4th 566, 574.) "While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' ''rational speculation'' ' as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' [Citations.]" (*People v. Turnage* (2012) 55 Cal.4th 62, 75.)

Here, the Legislature had a rational basis for differentiating between the two classes. As discussed, it could not permit those who had litigated their claims to finality (on any grounds) to revive their claims, because doing so would violate the separation of powers. This provides a sound rational basis for the distinction.

In reaching this conclusion, we acknowledge that "penalizing" plaintiffs for their diligence in bringing claims years ago, while "rewarding" those who sat on their claims and did nothing, is not a wholly equitable outcome. Nonetheless, while the *Perez* court also recognized this potential unfairness, it explained that conversely, "there are the defendants who years ago obtained favorable judgments based on the law as it then existed, likely incurring substantial attorney's fees in order to do so. Relying on what appeared to be a final judgment, they might have felt free years later to discard favorable evidence and might as well have lost track of key witnesses." (*Perez, supra*, 146 Cal.App.4th at p. 188.) Thus, the Legislature may have barred plaintiffs from relitigating claims not only because of separation of powers concerns, but also because reviving fully adjudicated claims would unfairly impact those defendants who depended on the finality of those decisions. These are sufficient rational bases for distinguishing between the two

groups. Thus, section 340.1's revival provision does not violate the equal protection clause.

DISPOSITION

The judgment is affirmed. The District shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


                                             _____KRAUSE_____, J.


We concur:


_____DUARTE_____, Acting P. J.


_____EARL_____, J.

13

Filed 3/27/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| M.D. DOE et al., | C095253 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVCV20-00738) |
| v. | |
| MARYSVILLE JOINT UNIFIED SCHOOL DISTRICT, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Yuba County, Stephen W. Berrier, Judge. Affirmed.

Santana and Smith Law Firm and Matthew Clinton Smith for Plaintiffs and Appellants.

Spinelli, Donald & Nott and Lynn A. Garcia for Defendant and Respondent.

1

THE COURT:

The opinion in the above entitled matter filed on March 2, 2023, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.

BY THE COURT:

_____DUARTE_____, Acting P. J.

_____KRAUSE_____, J.

_____EARL_____, J.

2